Not for Publication

## United States District Court
## for the District of New Jersey

| | |
|---|---|
| In re: | Case No. 13-36463 (GD) |
| WEN-KEV MANAGEMENT, INC., et al., | Civil No. 14-2196 (KSH) |
| *Debtors*, | **Opinion** |

    This matter comes before the Court on the debtors' appeal from an order of the bankruptcy court that converted their Chapter 11 bankruptcy cases to proceedings under Chapter 7 pursuant to Section 1112(b) of the Bankruptcy Code. For the reasons that follow, the Court affirms.

**I.  Factual and Procedural History**

    This bankruptcy proceeding deals with certain "Wendy's" franchise restaurants, which were located in New York and New Jersey and owned by Kevin Rasquinha. Rasquinha died prior to the commencement of these proceedings, and his brother, Keith, continued the businesses' operation and management in his stead. (Trustee Br. at 2.)

    The Rasquinha enterprise consisted of nineteen separate entities, all of which filed for bankruptcy on December 4, 2013. (Wen-Kev Management ("WKM") Br. at 5-6.) Ten filed voluntary petitions for relief under Chapter 11 (the "Debtors"), and nine filed voluntary petitions for relief under Chapter 7 (the "Affiliated Debtors"). (WKM Br. at 6.) Of the Affiliated Debtors, only two operated Wendy's franchise restaurants, both of which were closed as of the petition date. (WKM Br. at 6.) The remaining seven were formed as part of a reorganization plan involving both the Debtors and Affiliated Debtors, which was never completed. As a result,

1

they never became operational. (WKM Br. at 6.) As to the Debtors in these proceedings, nine of the ten Rasquinha entities operated franchise restaurants. (WKM Br. at 6.) The remaining entity, Wen-Kev Management, Inc., essentially handled their operation. (Connolly Dec., Ex. A ("Transcript") 25:6-17.)

After being administratively consolidated on December 11, 2013, the Chapter 11 cases proceeded with dispatch. On December 31, 2013, the Debtors (with the exception of Wen-Kev Fulton, Inc.[1]) filed a motion that sought to sell substantially all of their assets. (Trustee Br. at 4.) The proceeds were to be used to pay the claims of the Debtors' common secured creditor, General Electric Capital Credit ("GE Capital"), as well as other claims associated with the cure, assumption and assignment of their franchise agreements with Wendy's International, Inc. and their landlords. (Trustee Br. at 4.) Initially the Debtors negotiated with Wenesco Restaurant Systems LLC ("Wenesco") for purchase of the Debtors' assets, and ultimately an open court auction was held that produced a high bid of $9,650,000, compared to Wenesco's stalking horse bid of $7,700,000. An order approving the sale was entered on February 28, 2014. (Trustee Br. at 6-7.)

Shortly afterwards the closing for that sale was completed (WKM Br. at 6) and the proceeds satisfied in full the secured lender's claim, outstanding franchise fees to Wendy's International LLC, and all landlord cure amounts. With the exception of certain funds placed in escrow to cover "possible liabilities," the remaining balance of $4,712,625.01 was placed in the Debtors' attorneys' trust account. Those funds are intended to pay any remaining creditor claims. (WKM Br. at 6-7.)

---

[1]   Wen-Kev Fulton, Inc. was voluntarily converted to Chapter 7 on February 24. 2014. (Trustee Br. at 5.)

Meanwhile, in the Chapter 7 proceedings, Charles M. Forman was appointed as trustee for the estates of each of the Affiliated Debtors ("trustee" or "Chapter 7 trustee"). The trustee has since begun an "investigation into the operations, affairs, assets and liabilities of the Affiliated Debtors," including "the interrelationships between the Debtors and the Affiliated Debtors." (Trustee Br. at 6.) On January 6, 2014, the trustee conducted a Meeting of Creditors for the Affiliated Debtors, where Keith Rasquinha testified in a representative capacity as to the nature of the Debtors' and Affiliated Debtors' operations. The trustee issued subpoenas to the principal and accountant of both the Debtors and Affiliated Debtors—the Debtors moved to quash on grounds of breadth, but later signaled an intent to respond. (Trustee Br. at 6.)

## II. Bankruptcy Court Ruling

On February 19, 2014, the Chapter 7 trustee filed a motion in these Chapter 11 proceedings for (1) conversion of the Chapter 11 cases to Chapter 7 pursuant to Section 1112(b) of the Bankruptcy Code; (2) substantive consolidation of both proceedings; (3) authorization to operate Wen-Kev Fulton, Inc., for a limited period pursuant to Section 721; and (4) entry of an order establishing procedures for the payment of Chapter 11 administrative expenses on an expedited basis. The focus of this appeal concerns the first request for relief.

The trustee argued to the bankruptcy court that there was cause for conversion because, having already liquidated their saleable assets, the Debtors no longer maintained a "reasonable likelihood of rehabilitation" within the meaning of Section 1112(b). Furthermore, accumulation of administrative costs inherent in Chapter 11 would result in a "continuing loss to or diminution of the estate" pursuant to Section 1112(b)(4)(A). The bankruptcy court agreed. In an order entered March 20, 2014, the court converted the Debtors' cases to proceedings under Chapter 7

3

and adjourned the motion for consolidation to April 15, 2014. Wen-Kev Management, Inc. now appeals both rulings.[2]

### III. Jurisdiction and Standard of Review

The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1). An order to convert Chapter 11 proceedings to Chapter 7 is "final" for the purposes of that rule, *Halvajian v. Bank of New York (In re Halvajian)*, 216 B.R. 502, 510 (D.N.J. 1998) (Wolin, J.), and this Court reviews for abuse of discretion. *In re Am. Capital Equip., LLC*, 688 F.3d 145, 161 (3d Cir. 2012). In order to find an abuse of discretion, the Court must find with "definite and firm conviction" that the bankruptcy court "committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *In re Nutraquest, Inc.*, 434 F.3d 639, 645 (3d Cir. 2006). The decision "must rest on 'a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'" *Id.* at 546 (quoting *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 320 (3d Cir. 2001)).

### IV. Discussion

The bankruptcy court has "broad discretion" in deciding whether to convert a Chapter 11 proceeding to Chapter 7, *In re Prosser,* 388 Fed. App'x. 99, 99 (3d Cir. 2010), and may do so upon a showing of "continuing loss to or diminution of the estate and an absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(1). The moving party bears the burden of establishing both of these factors. The first asks whether, after commencement of the Chapter 11 proceeding, the debtor has continued to experience a negative cash flow, or, alternatively, a

---

[2] Wen-Kev Management, Inc. also makes reference to the bankruptcy court's adjournment of the motion to consolidate in its notice of appeal. Upon review, however, that issue is not substantively addressed in its submissions to this Court. Rather, reference is made to consolidation only as a means of suggesting that the motion to convert should have been adjourned as well. The Court addresses the motion to convert on its merits in Section IV, *infra*, and declines to review the bankruptcy court's adjournment of the motion to consolidate.

decline in asset value.  The second seeks to determine "whether there is any reasonable likelihood that the debtor, or some other party, will be able to stem the debtor's losses and place the debtor's business enterprise back on solid footing within a reasonable amount of time."  7-1112 Collier on Bankruptcy P 1112.04 (16th ed.).

The trustee here carried his burden in establishing a "continuing loss to or diminution of the estate."  In *Loop Corp. v. U.S. Trustee*, 379 F.3d 511 (8th Cir. 2004), the Eighth Circuit considered a scenario nearly identical to that at issue here.  After filing petitions for relief under Chapter 11, the debtors successfully liquidated their primary businesses and substantially all of their remaining assets.  As in this case, the proceeds were used to pay the debtors' secured creditors, and their remaining assets consisted mainly of cash and potential causes of action.  After closing on the sales, the United States Trustee filed a motion for conversion of the cases to Chapter 7, which was opposed by Loop Corp., one of the debtors' remaining creditors.

In granting the motion, the bankruptcy court concluded that cause existed under Section 1112(b)(1) "because, first, the ongoing expenses associated with the estate and attempting to negotiate a confirmable plan constituted 'continuing loss to or diminution of the estate' and, second, the debtors were liquidating and therefore had no likelihood of rehabilitation."  *Id.* at 514-15.  The Eighth Circuit affirmed. The court noted that Loop conceded that, "as liquidating entities that had ceased their business operations but continued to incur administrative expenses, [the debtors] had a negative cash flow."  *Id.* at 515.  In the context of a debtor "who has ceased business operations and liquidated virtually all of its assets," the court reasoned, "any negative cash flow—*including that resulting only from administrative expenses*—effectively comes straight from the pockets of the creditors."  *Id.* at 516 (emphasis added).

5

Here the Debtors sold substantially all of their assets following their petitions for relief under Chapter 11 and they no longer operate any active businesses. (Trustee Br. at 8 ("[N]one of the Appellants[] retained their Wendy's franchises, their restaurant operations, their leasehold interests, or any of their physical assets" following the court-auctioned sale).) At the same time, however, administrative expenses will continue to accrue under Chapter 11. (Trustee Br. at 11 ("Operating reports, U.S. Trustee fees and other ongoing costs and obligations foreign to Chapter 7 would continue').) The bankruptcy court considered these facts, finding that "the ongoing expenses associated with administering the estate and attempting to negotiate confirmable plans … can be deemed to be continued loss to … the estate." Particularly so where, as here, "what is left [of the Debtors' estate] is going to be liquidated." (Transcript at 30-31.) As the Eight Circuit held in *Loop*, "[t]his is enough to satisfy the first element of § 1112(b)(1)." *Id.* at 516.

The second element of Section 1112(b)(1)—the "absence of a reasonable likelihood of rehabilitation"—also is satisfied here. Rehabilitation in this context means "to put back in good condition and reestablish on a sound basis." *In re The AdBrite Corp.*, 290 B.R. 209, 216 (Bankr. S.D.N.Y. 2003). "It signifies that the debtor will be reestablished on a secured financial basis, which implies establishing a cash flow from which its current obligations can be met." *Id.* at 216. The Debtors here, however, do not seek to reorganize and they maintain no hope for a financially sound rehabilitation. (Trustee Br. at 8 ("There is nothing left to reorganize, nor are there any complicated, ongoing business operations").) Rather, the final act to be achieved in this proceeding is distribution of the liquidated estate—at oral argument on the trustee's motion for conversion, Debtors counsel represented that he had "started drafting liquidating plans and [expected] to be filing that with the court shortly." (Transcript at 14:7-9.) Under such circumstances, the bankruptcy court correctly found cause to convert these cases under Section

1112(b)(1).  *See In re Gonic Realty Trust*, 909 F.2d 624, 627(1st Cir. 1990) ("[W]ith no business left to reorganize, Chapter 11 proceedings were not serving the purpose of rehabilitating the debtor's business."); *In re The Ledges Apartments*, 58 B.R. 84, 87 (Bankr. D. Vt. 1986) ("Reorganization encompasses rehabilitation and may contemplate liquidation.  Rehabilitation, on the other hand, may not include liquidation.").

**V.     Conclusion**

For the foregoing reasons, the Court will affirm bankruptcy court's March 20, 2014 order. An appropriate order will be entered.

Date: December 29, 2014

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.